UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | ) ) | CASE NO. 1:24-cv-4288 |
| | ) | |
| Plaintiff, | ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| WALTER COLE, an individual, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiffs HP TUNERS, LLC, a Nevada limited liability company ("HPT"), by its attorneys, for its Complaint for Injunctive Relief ("Complaint") against Defendant WALTER COLE ("Defendant"). In support thereof, HPT states as follows:

**NATURE OF THE ACTION**

1.      At substantial expense, hard work, and ingenuity over the course of many years and thousands of man hours, HPT has developed software tools to enable complete, cost-effective tuning and data-acquisition solutions.

2.      Over the years, HPT has carefully guarded its proprietary software tools and source code in order to protect its trade secrets, specifications, and software.

3.      Here, Defendant wrongfully obtained and possesses HPT's confidential and proprietary information, and has misappropriated HPT's trade secrets and proprietary information to sell and provide "cracked" software that allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

1

4.       This is an action against Defendant for: (i) violation of the Digital Millennium Copyright Act ("DMCA") under 17 U.S.C. §1201(a)(1)(A); (ii) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (iii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 *et seq.*; (iv) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*; (v) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; (vi) breach of contract (EULA); (vii) tortious interference with prospective economic relations; and (viii) breach of contract (Settlement Agreement).

## PARTIES

5.       HPT is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois. None of the members of HPT are citizens or residents of the State of Ohio.

6.       Defendant is an individual, and a citizen and resident of the State of Ohio with an address of 518 Addy Ave., Sidney, OH 45365.

## JURISDICTION AND VENUE

7.       This Court has subject matter jurisdiction for the DMCA, CFAA, and DTSA claims pursuant to 28 U.S.C. §1331. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 based upon the complete diversity of citizenship of the parties and the amount in controversy exceeding the jurisdictional minimum of $75,000. This Court has supplemental jurisdiction for the state-law claims pursuant to 28 U.S.C. §1367.

8.       Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events or omissions giving rise to the claims asserted in this Complaint

occurred, and a substantial part of the property that is the subject of this action is situated, in this judicial district.

**BACKGROUND FACTS**

9.  HPT is a niche business, which provides software tools to enable complete, cost-effective automotive tuning and data-acquisition solutions for after-market manufacturers, diagnostic technicians, motor sports participants and other qualified professionals.

10.  HPT's business includes but is not limited to computer hardware and software, designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles, and watercraft) (the "HP Tuners Business").

11.  HPT has expended significant time, money, and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs, and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

12.  HPT conducts business nationwide. Over the years, HPT has invested a great deal of time and money in developing its proprietary tools and source code, and in building and growing the HP Tuners Business.

13.  In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured, and maintained an extensive network of vendors, resellers, and customers, to which HPT provides its offerings.

14.  HPT's network of vendors, resellers, and customers is expansive and relies on HPT to ensure that only authorized, authentic software tools and offerings are available in the marketplace.

15.     HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, resellers, and customers.

16.     HPT prides itself in catering to the needs of its vendors, resellers, and customers and in providing authorized, authentic, and functional software tools and offerings, and the most competitive pricing in the industry.

17.     HPT works diligently to create new software tools and offerings and to quickly and adeptly match its vendors, resellers, and customers' needs and requests.

18.     HPT is constantly working to develop its software tool, source code, and offerings, and has devoted substantial time, money, and resources to protect its confidential and proprietary information and to avoid efforts by third parties to pirate HPT's software tools and offerings.

19.     As a result of HPT's reputation, exceptional service, and diligent development of software tools and offerings, HPT has developed long-standing relationships with many of its vendors, resellers, and customers.

20.     HPT's confidential and proprietary software, source code, license-key generator, and offerings have been developed and extensively refined by HPT at a substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

21.     HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources.  HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.

22.     Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information.

23.     HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

a)      HPT protects access to its Confidential Information through computer passwords;

b)      HPT protects to its Confidential Information through hard-drive encryption on all employee's computers;

c)      HPT protects access to its Confidential Information through sophisticated firewalls;

d)      HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements;

e)      HPT limits the number of employees having access to its Confidential Information.

f)      Employees are given access to HPT's Confidential Information on a "need-to-know" basis;

g)      HPT does not give access to its Confidential Information to non-employees;

h)      HPT employees are forbidden from copying, transferring, or otherwise duplicating any of HPT's Confidential Information; and

i)      HPT requires each employee to return to HPT all Confidential Information

when the employee leaves HPT's employ.

24.     Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary software tools, source code, software, and offerings, including, but not limited to, entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary software tools, source code, software, and offerings.

25.     Upon information and belief, given Defendant's use and access to HPT's proprietary software, Defendant entered into an End User License Agreement ("EULA").

26.     HPT's EULA provides, in pertinent part:

3.     **Limitations and Obligations**

a.     **Restrictions on Use**.   Licensee shall not:

(i)     make the Licensed System or accompanying materials available to, or use the Licensed System for the benefit of, anyone other than Licensee except expressly permitted in this EULA;

(ii)     market, sell, distribute, sublicense, use, modify, translate, reproduce, create derivative works from, dispose of, rent, lease, or authorize or permit access or use of any portion of the Licensed System, except as expressly permitted in this EULA, without the expressed written consent of HP Tuners LLC;

(iii)     reverse engineer, decompile, or disassemble the Licensed System, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation;

(iv)     interfere with or disrupt the integrity or performance of the Licensed System;

(v)     copy the Licensed System or any part, feature, function thereof;

(vi)     export or use the Licensed System in violation of U.S. law, including Department of Commerce export administration regulations;

(vii)   remove any copyright and other proprietary notices contained in the Licensed System;

(viii)   use the Licensed System in a manner which infringes or violates any of the intellectual property, proprietary, or other rights of HP Tuners LLC or any third party;

(ix)   distribute or transfer the installer of the Licensed System, any files installed by the installer of the Licensed System, or any files contained within the installer of the Licensed System; or

(x)   access and use the Licensed System in any manner that is inconsistent with the terms of this EULA.

b.   **Additional Obligations.**

(i)   Licensee shall comply in full with all federal, state, local and foreign laws, rules and regulations in connection with its access to, and use of, the Licensed System.

(ii)   The Licensed System may be accessed and used only in a form and manner approved by HP Tuners LLC in its sole discretion, and only in accordance with the terms and conditions of this EULA.

(iii)   Licensee shall not remove HP Tuners LLC's copyright notices and other proprietary notices on the Licensed System, and all copies thereof shall be subject to all terms, conditions, and obligations of this EULA.

27.    This is not the first time that HPT has been required to seek to hold Defendant accountable for his misconduct.

28.    Previously, HPT initiated a suit based on prior misconduct engaged in by Defendant.

29.    The lawsuit was resolved pursuant to an agreement whereby Defendant agreed to cease, desist and refrain from, among other things, engaging in any future misconduct associated with HPT's products.

30.     In connection with that agreement, Defendant agreed that if he breached his obligations thereunder, Defendant would be obligated to pay HPT the sum of $75,000 per act that constitutes a violation of his obligations as liquidated damages.

31.     Despite Defendant's agreement to cease, desist and refrain from engaging in any future misconduct, Defendant is at it once again.

32.     Moreover, Defendant publicly posted videos containing instructions on how to bypass HPT's licensing and avoid detection with a firewall.

33.     Defendant's actions constituted an unlawful release and dissemination of HPT's confidential and proprietary information.

34.     Moreover, on or about April 23, 2024 (and, upon information and belief, on other dates), Defendant was actively marketing and selling "hacked" or "cracked" versions of HPT's software for sale to third parties.  Upon information and belief, Defendant has continued to repeatedly market and sell "hacked" or "cracked" versions of HPT's software to third parties.

35.     The significance of the "hacked" or "cracked" software offered by Defendant is that it allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

36.     HPT did not authorize Defendant or any others to modify HPT's software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

37.     A fundamental component of HPT's business is the sale and distribution of credits via application keys, which are the license mechanism used by customers to tune vehicles.

38.     Only HPT is authorized to generate authentic application keys for use with HPT's software tools, and HPT credits are generally sold for approximately $50.00 USD.

39.     However, Defendant has misappropriated HPT's trade secrets and proprietary information and has knowingly generated, created, used, and/or obtained fraudulent software that allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

40.     Defendant, acting in concert with others, has wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for his own profit as well as to cause harm to HPT.

41.     Defendant has knowingly and wrongfully acquired, possess, and are using HPT's Confidential Information to generate revenues for his own benefit and/or the benefit of others.

## COUNT I

## VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §1201(a)(1)(A)

42.     HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

43.     Defendant's actions constitute direct circumvention of a technological measure that effectively controls access to a copyrighted work in violation of 17 U.S.C. §1201(a)(1)(A).

44.     Defendant, through his actions, circumvented HPT's technological measures to access HPT's software, systems and Confidential Information in an unauthorized manner by bypassing HPT's usage restrictions.

45.     Defendant's acts constituting DMCA violations have been and continue to be performed without the permission, authorization or consent of HPT.

46.     Defendant's conduct has caused damage to HPT and has unjustly enriched Defendant, in an amount to be proven at trial.

47.     As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

48.     If Defendant is permitted to continue his conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendant's conduct is enjoined during the pendency of this action and thereafter.

### COUNT II

### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030

49.     HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

50.     Defendant, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems, and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for his own profit as well as to cause harm to HPT.

51.     HPT's business, computers, software, systems and source code are used in, and affect, interstate commerce.

52.     Moreover, in doing so, Defendant intended to and succeeded in obtaining something of value in excess of $5,000 per year (as required by the CFAA).

53.     Through its fraudulent activity, Defendant has generated profits and obtained revenues that otherwise would have gone to HPT.

54. Defendant's activities described hereinabove constitute a violation of the CFAA, 18 U.S.C. §1030(a)(4).

55. Plaintiff, HPT, may maintain a civil action against Defendant for violations of the CFAA pursuant to 18 U.S.C. §1030(g).

56. HPT is entitled to compensatory damages, injunctive relief and other equitable relief.

57. As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

58. If Defendant is permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendant's conduct is enjoined during the pendency of this action and thereafter.

## COUNT III

### VIOLATION OF THE DEFEND THE TRADE SECRETS ACT, 18 U.S.C. § 1836

59. HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

60. HPT owned and possessed confidential and proprietary documents and data containing trade secrets.

61. Without authorization by HPT, Defendant provided third parties with copies of and access to the confidential and proprietary intellectual property, including its confidential and proprietary information.

62.     The confidential and proprietary intellectual property of HPT wrongfully possessed by Defendant, gives Defendant, and those active in concert with him, the ability to bypass all licensing checks and prompts, thus enabling HPT's users to use the software and interfaces on any vehicle they wish without paying any licensing fees to HPT.

63.     HPT's confidential and proprietary information is not accessible to the public.

64.     HPT has taken various reasonable measures to ensure that HPT's confidential and proprietary information remain confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets.

65.     HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

66.     In violation of law, Defendant has misappropriated HPT's trade secrets by providing HPT's confidential and proprietary intellectual property to third parties without authorization.

67.     Such dissemination and disclosure of HPT's confidential and proprietary trade secret information constitutes misappropriation under the DTSA.

68.     As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

69.     If Defendant is permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.

70.     Such irreparable damage will continue unless Defendant's conduct is enjoined during the pendency of this action and thereafter.

COUNT IV

**VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, ET. SEQ.**

71.     HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

72.     HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

73.     Defendant has misappropriated HPT's confidential and proprietary documents and data containing trade secrets to modify HPT's confidential and proprietary source code to allow users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

74.     HPT's confidential and proprietary source code has never been accessible to the public.

75.     HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

76.     HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

77.     In violation of law, Defendant has misappropriated HPT's trade secrets by modifying HPT's confidential and proprietary software to bypass all licensing checks and prompts to obtain "free" tuning credits from.

78.     Defendant, acting in concert with others, has wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems, and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for his own profit as well as to cause harm to HPT.

79.     Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act.

80.     As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

81.     If Defendant is permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendant's conduct is enjoined during the pendency of this action and thereafter.

## COUNT V

## UNFAIR COMPETITION UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET. SEQ.

82.     HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

83.     Through the acts described hereinabove, Defendant has engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

84.     Specifically, Defendant is deceiving the public by passing off HPT software as authentic software tools and offerings of HPT when, in fact, they are not.

85.    Defendant's misconduct, as described hereinabove, affects the public interest.

86.    HPT's interests have been injured in numerous ways as a result of Defendant's unfair and deceptive acts and practices.

87.    But for Defendant's unfair and deceptive practices, HPT would not have suffered these injuries.

**COUNT VI**

**<u>BREACH OF CONTRACT – END USER LICENSE AGREEMENT</u>**

88.    HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

89.    In connection with Defendant's use of HPT's software, Defendant entered into the EULA with HPT.

90.    The EULA is a valid and enforceable contract.

91.    HPT fully performed its obligations under the EULA.

92.    By virtue of Defendant's misconduct as set forth hereinabove, Defendant has breached his obligations under the EULA.

93.    Defendant's misconduct constitutes a material breach of the EULA.

94.    As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss, and damages in an amount to be proven at trial.

**COUNT VII**

**<u>TORTIOUS INTEFERENCE WITH PROSPECTIVE</u>**

**<u>CONTRACTUAL OR ECONOMIC RELATIONS</u>**

95.      HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

96.      HPT has maintained valid business relationships with many vendors, resellers, and customers.

97.      HPT has a reasonable expectation that the relationships with its vendors, resellers and customers will continue and will not be disrupted by Defendant's conduct.

98.      Defendant knew of HPT's relationships and expectations, but intentionally, wrongfully, and unjustifiably interfered with those relationships.

99.      Specifically, Defendant has solicited vendors, customers and suppliers of HPT to purchase hacked versions of software with licensing defeated from Defendant, has sold hacked versions of software with licensing defeated to third parties, and has interfered with HPT's relationships with its vendors, resellers, and customers.

100.     As a result of Defendant's actions, HPT has suffered irreparable harm for which it has no adequate remedy at law.  Unless enjoined, Defendant's will continue to harm HPT's business, causing further irreparable harm to HPT.

101.     As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

**COUNT VIII**

**BREACH OF CONTRACT – SETTLEMENT AGREEMENT**

102.     HPT repeats and realleges ¶¶ 1 through 41 of the Complaint as if fully set forth herein.

16

103.    Plaintiff and Defendant previously entered into a Settlement Agreement dated on or about August 29, 2023 (the "Settlement Agreement").

104.    The Settlement Agreement is a valid and enforceable contract.

105.    HPT fully performed its obligations under the Settlement Agreement.

106.    By virtue of Defendant's misconduct as set forth hereinabove, Defendant has breached his obligations under the Settlement Agreement.

107.    Defendant's misconduct constitutes a material breach of the Settlement Agreement.

108.    Pursuant to the Settlement Agreement, Defendant is liable to pay HPT $75,000 for each act that constitutes a violation of his obligations under the Settlement Agreement as liquidated damages.

109.    As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss, and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** HP TUNERS, LLC respectfully prays for judgment against Defendant and in its favor as follows:

1.    Awarding and ordering an accounting and disgorgement of all Defendant's profits and/or damages suffered by Plaintiff due to Defendant's misappropriation of the HPT's confidential and proprietary trade secrets pursuant to:

      a.   the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1)(A);

      b.   the Computer Fraud and Abuse Act, 18 U.S.C. §1030;

      c.   the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq.; and

d. the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.

2.      Awarding Plaintiff exemplary damages as authorized by statute for Defendant's willful misappropriation.

3.      Awarding liquidated damages to HPT in the amount of $75,000 for each act of misconduct in violation of Defendant's obligations under the Settlement Agreement.

4.      Enjoining Defendant from using misappropriated trade secrets pursuant to statute.

5.      Entry of a declaratory judgment that Defendant's conduct was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

6.      Enjoining Defendant from accessing HPT's Protected Computers.

7.      Awarding such other and further relief as may be just and proper caused by Defendant's violation of the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1)(A), Defend Trade Secrets Act, 18 U.S.C. §1836 et seq., and the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

8.      Awarding HPT compensatory damages, in an amount to be proven at trial.

9.      Awarding pre- and post-judgment interest to HPT.

10.     Awarding HPT a preliminary and permanent injunction enjoining Defendant, his agents, servants and employees, and those people in active concert or participation with them from:

a. Passing off any of his products or services as those of HPT;

b. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendant's businesses, products or services;

18

      c.   Causing a likelihood of confusion or misunderstanding as to his affiliation, connection or association with HPT or any of HPT products or services; and

      d.   Unfairly competing with HPT in any manner.

11.     An award of damages in an amount to be proven at trial based on Defendant's unfair competition.

12.     An award of damages in an amount to be proven at trial based on Defendant's breach of contract.

13.     An award of damages in an amount to be proven at trial based on Defendant's tortious interference with HPT's prospective contractual or economic relations.

14.     An order that Defendant be required to file with the Court and to serve upon HPT counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, specifically setting forth the manner in which he has complied with such injunction.

15.     An award of the costs and expenses, including reasonable attorney's fees, incurred by HPT in connection with this action as provided for by statute.

16.     An award of such other and further relief as the Court deems just and proper.

Dated: May 24, 2024            RESPECTFULLY SUBMITTED,

**HP TUNERS, LLC**

By: *s/ Andrew P. Bleiman*
Andrew P. Bleiman (ARDC 6255640)
Mark I. Fishbein (ARDC 6206919)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
(312) 206-5162
andrew@marksklein.com
mark@marksklein.com

Attorneys for HP Tuners, LLC